IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Hector Hernandez, <br><br> Plaintiff, <br><br> v. <br><br> Tarry Williams, *et al.* <br><br> Defendants. | Case No.: 23-cv-50267 <br><br> Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Hector Hernandez has no upper teeth, and hasn't since February 2022. He alleges that Defendant Wexford Health Sources, which is responsible for providing dental care at Dixon Correctional Center, has denied him dentures in violation of the Eighth Amendment. Wexford moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that Mr. Hernandez has failed to state a claim under 42 U.S.C. § 1983. For the reasons explained below, the motion is denied.

I. **Background**

Plaintiff Hector Hernandez, an inmate at Dixon Correctional Center, had *all* his upper teeth extracted while in state custody. Third Am. Compl. (Dkt. 20) ¶ 12. Since the extraction in February 2022, Hernandez has made steady efforts to obtain upper-plate dentures. *Id.* ¶ 14. He asked prison officials to schedule a denture fitting appointment, submitted written requests for care, and wrote a letter to Defendant Wexford detailing his needs. *Id.* ¶¶ 14—16.

1

In response to these complaints, Wexford sent a memorandum listing the current wait times for inmate dental care. *Id.* ¶ 16. Hernandez was placed on a waiting list to be fitted for dentures and was told to expect about 20-months' delay. *Id.* Several IDOC employees told Hernandez he'd been placed on the waiting list. *Id.* ¶ 19, 21, 23. But they didn't offer additional aid. *Id.* ¶ 14. When Hernandez approached a Wexford provider—Dr. Larry Sy—about scheduling an appointment, Sy laughed in Hernandez's face. *Id.* ¶ 26. Hernandez repeatedly asked about dentures and was repeatedly told to wait. *Id.* ¶¶ 19—23.

Fast forward to today. Hernandez hasn't received dentures, or even an appointment. *Id.* ¶ 13. After thirty-one months without care, his gums are swollen and bleeding, his face is disfigured, he is mocked by other inmates, and he can't eat properly. *Id.* He isn't alone, either. Numerous Dixon inmates have faced yearlong delays in obtaining dental fittings. *Id.*, Ex. 3, at 27.

In support of these allegations, Hernandez provides the 2020, 2022, and 2023 Lippert reports, attached as exhibits to the Third Amended Complaint. The reports suggest that Wexford's strict financial policies drive up appointment wait times. *Id.* ¶ 29. Wexford cuts costs by understaffing its onsite dental suites and denying inmate requests for offsite care. *Id.* These policies then cause lengthy delays (which functionally amount to denials), and some inmates don't receive the necessary care for missing teeth. *See id.*; Ex. 3, 14—15.

On these allegations, Hernandez contends that Wexford maintained a policy or custom of denying and delaying inmate dental care, which resulted in

Hernandez's pain, weight loss, difficulty eating, humiliation, and disfigurement. He argues that Wexford's custom of delayed denture fittings results in cruel and unusual punishment, in violation of the Eighth Amendment.

## II. Analysis

Under Rule 8, the plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007). A plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court accepts as true all the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955. "But the proper question to ask is still 'could these things have happened, not *did* they happen.'" *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Swanson v. Citibank*, N.A., 614 F.3d 400, 404–05 (7th Cir. 2010) (emphasis in original)). Importantly, on a motion to dismiss, the defendant bears of the burden of establishing the insufficiency of the complaint's allegations. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

Claims of constitutionally inadequate medical care by inmates serving prison sentences are governed by the Eighth Amendment. *Perez v. Fenoglio,* 792 F.3d 768,

3

776 (7th Cir. 2015). To state a claim of inadequate medical care under the Eighth Amendment, an inmate must allege (1) an objectively serious medical condition, and (2) that the defendant was deliberately indifferent to that serious condition. *Id.* "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Because Hernandez brings suit against Wexford itself, the claim must arise under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) as a private company acting under color of state law. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016). Under *Monell*, liability may lie in three circumstances: (1) the defendant employs an express policy that causes the constitutional injury, (2) the defendant has established a widespread practice that is so well settled that it constitutes a custom or usage, or (3) the defendant has final policymaking authority and caused the constitutional injury. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

In this case, Hernandez demonstrates a *Monell* pattern or practice by attaching three Lippert reports to his Complaint. When evaluating the sufficiency of a complaint, courts consider documents attached to the complaint, such as exhibits, for all purposes. FED. R. CIV. P. 10(c). *See e.g.*, *Bradford v. Wexford Health Sources, Inc.*, No. 16 C 8112, 2020 U.S. Dist. LEXIS 20133, at *37 (N.D. Ill. Feb. 6, 2020), ("the *Lippert* report undoubtedly offers support to his argument that the dental care he received was not an isolated event but rather part of a pattern of

4

conduct."). Similarly, the Lippert reports attached to this Complaint suggest Hernandez encountered a widespread custom of delays.

The 2023 Lippert report describes several inmates' experiences with Dixon's dental suite. In the Monitor's Sixth Report, one inmate complained his dentures "didn't fit right and he hadn't been able to see the dentist for over a year. He claimed to have lost weight and was eating mostly commissary items." *Id.* at 15. Another patient suffered difficulty eating because his poorly fitting dentures weren't corrected by a dentist. *Id.* at 14. And a third patient, who was documented as having no teeth, had no medical records showing he ever received a denture fitting appointment. *Id.* at 59. These findings are consistent with even larger trends. All around the state, IDOC facilities have "growing backlogs for . . . dentures replacements." Pl.'s Third Am. Compl., Ex. 3, at 27 ¶ 158.

Broadly speaking, the three Lippert reports describe a "dysfunctional" inmate healthcare system with statewide delays in obtaining dentures. Pl.'s Third Am. Compl., Ex. 1, at 105; Ex. 2, at 18; Ex. 3, at 92. The median wait time is nine weeks, with delays ranging from one week to thirty-eight. *Id.*, Ex. 1, at 135. The Lippert report from March 2023 states that "[a]nnual dental assessments, dental fillings, and denture repair and fittings were rarely if ever done [at Dixon]." *Id.*, Ex. 3, at 179. And in September 2022, an additional 114 Dixon inmates were "backlogged" for denture fittings, meaning they were waiting just to *reach* the six-month waiting period. *Id.* at 27. These reports plausibly suggest that Wexford has a policy or practice of delaying inmate denture fittings and, moreover, that policy

5

harmed Hernandez. By alleging a pattern of delays from September 2022 to March 2023 (that is, the same period where Hernandez was seeking dentures), Hernandez adequately pled both a policy and causation under *Monell*.

Now, notably, Wexford argues that Hernandez effectively changed course between his Third Amended Complaint and Response to Wexford's Motion to Dismiss. Def.'s Reply in Support of its Mot. to Dismiss, 1—2. That may be true. In response to Wexford's Motion to Dismiss, Hernandez claims that "numerous inmates have had to wait over a year to get denture fittings." Pl.'s Resp. to Def.'s Mot. to Dismiss, 2. That allegation does not appear on the face of his complaint. But in responding to a motion to dismiss, plaintiffs can "add factual allegations that are consistent with those alleged in the initial complaint." *Chavez v. Illinois State Police*, 251 F.3d 612, 650 (7th Cir. 2001). So, the question is not whether Hernandez added allegations to his reply brief, but whether his allegations have stayed consistent.

Hernandez initially claimed that Wexford denied his requests for care, but later characterized his experience as one of fruitless delays. These theories are not inconsistent. In some cases, extensive delays in inmate medical care can amount to a denial—such as when an inmate is released from confinement or dies from a condition before receiving care. Similarly, if Wexford denied an inmate care, but later retracted that denial, the inmate would still experience delays in getting treatment. The outcome is the same. Whether it was caused by a denial or delay,

6

Hernandez never received dentures. So, Wexford's argument misses the forest for the trees.

Essentially, the core issue before the Court is whether the Complaint states a claim. The Federal Rules of Civil Procedure "do not permit the courts to dismiss § 1983 municipal liability claims for lack of factual specificity under Rule 12(b)(6)." *McCormick*, 230 F.3d at 325. Under a notice pleading regime, the plaintiff need not present any legal theory of his claim. *See Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("A drafter who lacks a legal theory is likely to bungle the complaint (and the trial); [1] you need a theory to decide which facts to allege and prove. But the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.").

---

[1] That's what happened here. Even on his third try, Plaintiff's counsel haphazardly refers to delays and denials alike, never taking care to distinguish between the two. "In baseball, three strikes means you are out. In law, that is not always true, and the plaintiff[] certainly hope[s] that it will not be true in this instance." *United States ex rel. Griffith v. Conn*, No. CV 11-157-ART, 2015 U.S. Dist. LEXIS 165998, at *1 (E.D. Ky. Dec. 11, 2015). But it could have been. Because Hernandez had two prior opportunities to amend, this Court has discretion to dismiss this Count with prejudice. *See Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Instead, the Court spent a lot of time and effort unscrambling Hernandez's arguments. And before it could accept Hernandez's allegations as being true under Rule 12(b)(6), it struggled to understand what those allegations even were. Construing this complaint was needlessly time-consuming. So, in that regard, the Court is sympathetic to Wexford.

Nonetheless, a court must construe all pleadings as to do substantial justice, FED. R. CIV. P. 8(f), and it has tools other than dismissal to deal with an ambiguous complaint. Hernandez's complaint is frustrating—yes—but it ultimately puts Wexford on notice of the claim and, at this stage, that's all it has to do.

In his Third Amended Complaint, Hernandez adequately states a deliberate indifference claim. Prisoners might base their deliberate indifference claims on denials or delays in obtaining denture fittings. *See Perez*, 792 F.3d at 778. The "Eighth Amendment requires that prisoners be provided with a system of *ready access* to adequate dental care." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (emphasis added); *see Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir.1980), cert. denied, 450 U.S. 1041 (1981) ("Dental care is one of the most important medical needs of inmates.").

Although Wexford accurately states that natural delays in prison healthcare don't violate the Eighth Amendment, of course, it doesn't follow that prison officials can arbitrarily or maliciously withhold dental care. And by making this argument, Wexford invites this Court to view the allegations and reasonable inferences drawn from those allegations in its favor. The Court declines that invitation. Acceptance would be error. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). What's more, allegations of inexplicable delays in prison healthcare have commonly stated a claim for deliberate indifference. In *Hunt*, for instance, the Ninth Circuit held that a prisoner adequately pled a deliberate indifference claim merely by alleging that "prison officials were aware of his bleeding gums, breaking teeth and his inability to eat properly, yet failed to take any action to relieve his pain or to prescribe a soft food diet until new dentures could be fitted." 865 F.2d at 200. Because Hernandez makes comparable allegations in his Third Amended Complaint, he adequately states a claim.

8

In *Wynn v. Southward*, moreover, Wynn used an inmate grievance system to contact prison medical providers about obtaining dentures. 251 F.3d 588, 591 (7th Cir. 2011). After three months without treatment, he filed a § 1983 claim for deliberate indifference to his medical needs in violation of the Eighth Amendment. *Id.* Wynn's form complaint stated he was "unable to chew his food without his dentures, significantly impeding his ability to eat, and that he . . . suffered bleeding, headaches, and 'disfigurement.'" *Id.* The Seventh Circuit held these allegations were sufficient to defeat a 12(b)(6) motion. *Id.*

The similarities between Hernandez and Wynn are clear. Both plaintiffs appealed to prison officials for denture fittings to replace their missing teeth, and both experienced delays. Both suffered bleeding, disfigurement, and difficulty eating. Both pled those allegations in their complaint. The only meaningful difference is that Hernandez waited ten times longer than Wynn—that is, ten times longer than the Seventh Circuit found sufficient to state a deliberate indifference claim.

In short, Hernandez adequately identified Wexford's practice of delaying denture fittings and traced it to a plausible Eighth Amendment violation. In keeping with his allegations of Wexford's custom or policy of delayed dental care, Hernandez still hasn't received dentures, thirty-one months after his dental extractions. Taken as true, those allegations are sufficient to state a claim for deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.

### III. Conclusion

For the reasons explained above, Wexford's motion to dismiss Hernandez's *Monell* claim [29] is denied.

Date: September 23, 2024   By:_____
        Iain D. Johnston
        United States District Judge